# MERRIMACK.

## JULY TERM, A. D. 1855.

---

## MEAD *v.* MERRILL & *a.*

It is no defence to a promissory note, that another which was signed by a surety had, together with the first named, been given for the price of property sold to the principals; and that the surety had been induced to sign the last named note, by misrepresentations made by the payee as to the price, which would have constituted a defence on the part of the surety.

ASSUMPSIT, upon a promissory note for $200, signed by the defendants, and payable to one Edward H. Mead or order, and by him indorsed to the plaintiff. Plea, the general issue.

Upon the trial of the action, it appeared in evidence that the payee of the note, Edward H. Mead, being employed in the business of freighting merchandise between Pittsfield, in this county, and different points on the Concord and Boston and Maine Railroads, sold out his team of horses and carriages to the defendants, and received in payment therefor a note for five hundred dollars, signed by the defendants and one James Johnson, as their surety; and there was evidence in the case tending to show that James Johnson, previous to his signing said $500 note, and about the time when he was requested to put his name to it as surety for the defendants, asked said Edward H. Mead what the defendants had agreed to give him for the team; that said Edward replied, "five hundred dollars;" that said James made some objection to the price as being too high, but finally

consented to sign the note for $500, and that it was under-stood by said Edward that he, said James, was signing it as surety of the defendants. The evidence further tended to show that the note in suit was given on account of the bargain between said Edward and the defendants, either as an additional consideration for the sale of the team, or as a consideration for the transfer of the good-will of the busi-ness, and that said James had no knowledge of the note in suit, or of the agreement to give it, when he signed the $500 note. On the part of the defendants, it was con-tended that they were not liable upon the note in suit, for the reason that said James Johnson was induced to sign the $500 note, as the surety of the defendants, by false repre-sentations made to him by the payee, Edward, as to the terms of the bargain. And the court instructed the jury that the surety, James, when about to put his name upon the $500 note, had a right to know, if he chose to put the inquiry, what the terms of the bargain were between the defendants and said Edward, and that said Edward was bound to give him true information upon that subject; that if inquiries were made of him by said James, of such a character as would naturally lead to a disclosure of the whole consideration agreed to be paid, and any material matter were withheld by him, or false answers were given, it would be a fraud on said James; and whether such fraud would constitute a defence to the note in suit, as against Edward, the payee, would depend upon the question whether true answers to the inquiries made by said James, as they would be ordinarily understood, would have disclosed the note in suit as entering into, or constituting a part of the bargain.

The jury returned a verdict for the defendants, and the plaintiff moved that the same be set aside, and a new trial granted, on account of the aforesaid alleged erroneous in-structions of the court.

*Perley*, for the plaintiff.

If this were a fraud on the surety, he alone could take advantage of it. The contract being only voidable unless he chose to disaffirm it, it must be held as good to others. Story on Contracts, § 529.

The case of an underhand agreement with one of a man's creditors stands on peculiar grounds of public policy, and has no analogy to this case. Story on Contracts, § 226; *Clark* v. *White*, 12 Peters 178; Parsons on Contracts 515.

*Hayes & Norris*, with whom was *Bellows*, for the defendants, cited Chitty on Contracts, 5th Am. Ed., 527-8 and 623; 2 Kent 482-3; Burge on Suretyship 219, 224; *Pidock* v. *Bishop*, 3 B. & C. 605; *Stone* v. *Compton*, 5 Bing. N. C. 142; *Jackson* v. *Duchaire*, 3 T. R. 551; *Cockshot* v. *Bennett*, 2 T. R. 763; *Hill* v. *Gray*, 1 Stark. N. P. 434; *Trumbull* v. *Tilton*, 1 Foster's Rep. 128.

WOODS, C. J. It may safely be admitted, as a general principle, that a surety has a right to receive frank and explicit statements in reply to his inquiries relating to the risk of his undertaking, and which are made for the purpose of satisfying his own mind as to the safety or propriety of assuming it. Among these inquiries, are those which respect the consideration of the debt to which he is requested to lend his name; for a man that would take the hazard of aiding his friend in that manner, in a prudent adventure, might well be supposed to decline it, in a case in which the debt proposed is an imprudent one, the property purchased of doubtful utility to the principal at any price, or purchased at a price above its practical and real worth. If the payee of a note, or other creditor, under such circumstances, deceive the surety on such a subject, and by means of misrepresentations as to the consideration and origin of the debt, induce him to enter into a contract of guaranty in behalf of the principal, which, but for such misrepresentation, he

might be supposed to have declined, there is good ground, as well upon the reason of the thing as upon authority also, for saying that the surety might found upon such circumstances a substantial defence to any action that might be brought upon his promise, at least beyond the extent and value of any indemnity he may have taken.

The question does not arise, but for the present purpose, it may well be conceded that if the surety were, as the case finds, induced to sign the note for five hundred dollars, by the payee's representations that such was the sum paid for the property described, while, in point of fact, the principals had undertaken, for two hundred more, as against the payee, who had deceived him in that particular, the facts would furnish the surety with a good defence.

But a different question is presented by this case. Here, the principal himself seeks to take advantage of the fraud supposed to have been committed against the surety.

The defendants, as the case supposes, bought the property for seven hundred dollars, and for their own uses and purposes. There is no pretence that they were misled by any representations of the vendor as to the nature and quality of the chattels sold, or as to the title. Nor does any thing appear in the case which they pretend would constitute any defence whatever in this action, except what arises from their having strengthened their engagement to pay a part of the price, by adding to their own names the guaranty of James Johnson.

The defence which they set up, arising from that circumstance, is this: That when Johnson assumed the suretyship, he did it in consequence of the representations of the payee, that the price of the chattels sold was no more than five hundred dollars, while in fact there was a private agreement of the defendants to pay two hundred more; that he would not have become surety upon any other conditions, or if he had known the whole truth. That the agreement to give the two hundred dollars in addition being, therefore, in fraud

of the surety, as tending to counteract the benefit he designed that the principal should derive from that act, was an unlawful agreement, which the court will not enforce.

We have attentively examined the authorities adduced to sustain the legal theory of this defence, and are clearly of the opinion that they fail to do so. They, without doubt, show that there are contracts which may be avoided by the parties making them, upon the ground that they secure to the other contracting parties advantages which the interests of third parties, protected by public policy, preclude them from taking. Of this nature, are agreements in fraud, of compositions arranged by creditors for the discharge of their debtors, and some others. But none of these cases bear any other than a very remote analogy to the one before us.

The case of *Jackson* v. *Duchaire* was briefly this. One Welch, to aid the defendant, bought of the plaintiff some furniture for £70, and took a bill of sale to himself. But the defendant had been prevailed on to give to the plaintiff her notes for £30 more, for the same thing. The cause was decided upon the two-fold ground that the transaction was a fraud upon Welch, and that there was no consideration for the notes.

The latter was a sound and extremely obvious defence. The case, therefore, is but a feeble authority for the principle involved in the former. But perhaps a still greater objection to the case, as a guide and as an exponent of the law is, that it does not intelligibly limit and define the principle itself upon which the court intended to base their decision. But however that may be, it comes far short of enunciating any principle applicable to the case of a surety *in ordinary business.*

The surety has no interest in the transaction between the principal and creditor, beyond his own indemnity. He is not supposed to stipulate or assume that the principal shall receive any specific benefit from the transaction, analogous

Mead *v.* Merrill.

to that which parties to a creditors' composition arrange for their common debtor.    The principal stands in no relation of tutelage or wardship to the surety, that lays the foundation of any presumption that the latter, in assuming suretyship, is arranging an advancement, or the like, for the principal.

If a case were  presented, in which facts so extraordinary should actually appear, there would then, perhaps, be a fair question as to the  applicability, of the doctrine of the case last referred to,  and  of the rights of  sureties  standing in the peculiar relation of parents, relations or other benefactors.    But nothing of the kind  appears here; and  nothing presented by the  report of this case,  distinguishes it from ordinary cases of suretyship.

If we were to decide that the defendants were not liable in this case, we must do so, as it would seem, upon grounds that would avoid the whole contract.    And this might leave the plaintiffs, who have parted with their property, in a position in which they ought not, but upon well considered grounds, to be left.

On the whole, we are  decidedly of the  opinion  that no defence is disclosed upon the case; that the  verdict, therefore, must be set aside, and a

*New trial granted.*